IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN GONZALEZ, ET AL. | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  06-CV-5471 |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, ET AL., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                                                          JUNE 6, 2007

Before the Court is defendant Commonwealth of Pennsylvania's motion to dismiss Count

I of plaintiffs' Complaint.  The other defendants have filed answers.  The Court will deny the

motion in part and grant the motion in part.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows courts to screen out cases "where a

complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim

which the plaintiff is without right or power to assert and for which no relief could possibly be

granted."  Port Auth. v. Arcadian Corp., 189 F.3d 305, 311-12 (3d Cir. 1999).  The Third Circuit

Court of Appeals instructs that "the complaint will withstand a Fed. R. Civ. P. 12(b)(6) attack if

the material facts as alleged, in addition to inferences drawn from those allegations, provide a

basis for recovery."  Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124-25 (3d Cir.

1998).  In deciding a motion to dismiss, a court is required to accept all of the plaintiff's factual

allegations as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Thus, a court should

grant a motion to dismiss only when it is "beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  In resolving a motion to dismiss, the court must primarily consider the allegations contained in the complaint, although matters of public record, orders, and exhibits attached to the complaint may also be considered.  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

FACTS

The plaintiffs are deaf individuals and qualified persons with disabilities under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., and the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  On December 16, 2004, a Lehigh County police officer arrested Steven Gonzalez at his place of work pursuant to bench warrants for unpaid parking tickets. Gonzalez was taken to the office of Pennsylvania District Justice Michele Varricchio.  Plaintiff Sonia Pacheo, Gonzalez's mother, followed Gonzalez to the court, where the Lehigh County Sheriff demanded that she surrender her driver's license and it was discovered that she also had outstanding parking tickets.

Justice Varricchio forced plaintiffs to proceed with a hearing and denied plaintiffs' requests for a qualified sign language interpreter, even though one was available.  Justice Varricchio instead ordered plaintiff's brother Harley Gonzalez, who is familiar with sign language, to interpret.  Justice Varricchio then elicited incriminating statements from plaintiffs concerning the parking tickets, and ordered them detained at the Lehigh County prison until they could pay the tickets.

Plaintiffs were taken to the Lehigh County prison and forced to read and sign documents without the benefit of explanation by a qualified interpreter, even though one was available.  The

plaintiffs were not made aware of the prison policies and accommodations for the deaf, including access to a TTY telephone.  Ms. Pacheo spent 24 hours in the Lehigh County prison until a relative was able to arrange for payment of her parking tickets and she was released.

Mr. Gonzalez spent one week in the Lehigh County prison during which time he was refused a written request for the use of a TTY telephone and harassed by prison employees and inmates on account of his deafness.  Prison employees ignored his requests for medical attention for asthma and a problem with his right foot for several days.  Mr. Gonzalez was also unaware that he had to submit a visitor list, and as a result prison personnel turned away his wife and mother when they attempted to visit.

After seven days at Lehigh County prison, Mr. Gonzalez was again taken before Justice Varricchio, and this time granted a qualified interpreter.  He was transferred from the Lehigh County prison to a work release program at the Lehigh County corrections center.  At the corrections center, Mr. Gonzalez was given limited access to a TTY phone in the evenings, but was unable to contact prospective employers during business hours and thus unable to benefit from the work release program.  Mr. Gonzalez was released from the corrections center after approximately 45 days.

Count I of plaintiffs' complaint seeks damages against the Commonwealth for failure to train its judicial officers concerning the provision of reasonable accommodations to individuals qualifying as disabled under the ADA and the RA.  Plaintiffs seek monetary damages, attorney's fees, and the entry of a declaratory judgment that the Commonwealth's policies and procedures have subjected plaintiffs to discrimination in violation of the ADA.  The Commonwealth seeks dismissal of Count I.

ANALYSIS

1.      Rooker-Feldman Doctrine

The Commonwealth argues that the Rooker-Feldman doctrine[1] divests this Court of

jurisdiction.  The Rooker-Feldman doctrine precludes lower federal court jurisdiction over claims

that were actually litigated or inextricably intertwined with state court decisions.  Desi's Pizza,

Inc. v. City of Wilkes-Barre, 321 F.3d 411, 417-18 (3d Cir. 2003).  A case is "inextricably

intertwined" under Rooker-Feldman if a federal court must determine that a state court judgment

was erroneous in order to grant relief.  FOCUS v. Allegheny Court of Common Pleas, 75 F.3d

834, 840 (3d Cir. 1996).  The Commonwealth asserts that Magistrate Justice Varricchio's refusal

to allow plaintiffs to use an interpreter was inextricably intertwined with her decision to

incarcerate plaintiffs pending the payment of their parking tickets.

Rooker-Feldman does not apply here, however, because plaintiffs' Complaint targets the

Commonwealth's failure to provide adequate training in reasonable accommodations, see Compl.

at ¶¶ 58-59, and this Court need not reach the validity of Justice Varricchio's decision in order to

rule on the allegations as plead.  The doctrine is based on the "well-settled understanding that the

Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a

state court decision."  Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir.

2000).  Plaintiffs in this matter are not appealing the convictions or punishments Justice

Varricchio adjudicated, making Rooker-Feldman inapplicable.

The Commonwealth cites to Keckeissen v. Commonwealth of Pennsylvania, 2005 WL

---

[1] The doctrine's name comes from the decisions in  Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

3508624 (E.D. Pa. Dec. 22, 2005), but that case is unbinding on this Court because it was

unreported, and factually distinguishable.  Keckeissen involved a *pro se* plaintiff who allegedly

suffered from post-traumatic stress syndrome and was denied a continuance in a custody battle in

the Bucks County Court of Common Pleas.  Id. at *1.  Plaintiff sought relief stemming from the

state court's refusal to grant him a continuance, and the court found that it lacked jurisdiction

under Rooker-Feldman because the relief plaintiff requested required a finding that the state

court was wrong in denying plaintiff a continuance.  Id. at *3.  This case presents a different

question because plaintiffs do not seek review of Justice Varricchio's refusal to provide an

interpreter, but rather cite her refusal as evidence in support of their allegation that the

Commonwealth failed to provide adequate training.

    This case is closer to Tennessee v. Lane, 541 U.S. 509 (2004), where two paraplegic

plaintiffs alleged that a court compelled their attendance at a court proceeding located on the

upper floor of a courthouse that had no elevator.  Id. at 513-14.  The Supreme Court did not

address whether Rooker-Feldman precluded the jurisdiction of the district court in which the

claim began, presumably because the state court's order compelling plaintiffs to appear at the

criminal proceeding was not an issue for review, but rather evidence of Tennessee's failure to

train its judicial officers.  Because subject matter jurisdiction may be raised at any time, see, e.g.,

Grupo Dataflux v. Atlas Global Group, 541 U.S. 567, 571 (2004), this Court will assume that the

Supreme Court's silence on Rooker-Feldman in Lane indicates that no jurisdictional issue existed

in that case.  Likewise, no jurisdictional issue exists here.

    2.    Sovereign Immunity

The Commonwealth also asserts sovereign immunity.[2]  States are typically immune from suit under the Eleventh Amendment to the Constitution, but Congress may abrogate Eleventh Amendment immunity pursuant to its powers under Section Five of the Fourteenth Amendment to the Constitution to remedy violations of the rights the Fourteenth Amendment guarantees. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  In Tennessee v. Lane, *supra*, the Supreme Court held that Title II of the ADA, as applied to cases involving access to the courts, was a valid exercise of Congress's Fourteenth Amendment Section Five power to abrogate sovereign immunity.[3]  541 U.S. at 533-34.

As discussed above, Lane involved two paraplegic defendants who were unable to appear at a criminal proceeding located on the third floor of a Tennessee courthouse because the courthouse had no elevator and they refused to allow officers to carry them.  Id. at 513-14.  The case at bar is similar, as the plaintiffs were unable to meaningfully participate in court proceedings because the Commonwealth refused plaintiffs' requests for a qualified sign language interpreter.   In both matters the state failed to reasonably accommodate the plaintiffs' disabilities in order to provide access to the courts.  Under Lane, therefore, Congress has validly abrogated the Commonwealth's sovereign immunity and plaintiffs may proceed with their lawsuit.

3.	Declaratory Relief

The Commonwealth argues that plaintiffs do not have standing to seek declaratory relief.

---

[2] The Commonwealth additionally argues that judicial immunity applies to foreclose suit.  See Stump v. Sparkman, 435 U.S. 349, 356 (1978).  The plaintiffs have not named Magistrate Justice Varricchio as a defendant however, and they do not seek to sue the Commonwealth for her actions, but rather for the Commonwealth's failure to train its judicial officers to avoid violations of the ADA and RA.  Judicial immunity is thus irrelevant.

[3] The Court noted that Title II's enforcement provision incorporates by reference 29 U.S.C. § 794a, id. at 517, which in turn references § 794, the provision of the RA under which plaintiffs sue.

The United States Constitution limits federal jurisdiction to matters that constitute an actual case or controversy.  U.S. Const. art. III, § 2.  In <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983), the Supreme Court held that a plaintiff lacked standing because he failed to satisfy the case or controversy requirement where he made a claim for declaratory and injunctive relief based on the Los Angeles police force's use of chokeholds.  <u>Id.</u> at 105.[4]  The Court found that although plaintiff might be able to seek damages for the past conduct, events occurring in the past could not be the source of a declaratory judgment because they gave rise to no actual case or controversy.  <u>Id.</u>

This case is similar to <u>Lyons</u> because plaintiffs seek monetary relief for past conduct and a declaratory judgment on the basis of the same conduct.  Just as the <u>Lyons</u> petitioner's "assertion that he may again be subject to an illegal chokehold" failed to "create the actual controversy that must exist for a declaratory judgment to be entered," <u>Lyons</u>, 461 U.S. at 104, plaintiffs here are unable to identify any definable future harm that would entitle them to a declaratory judgment in this case.  Under <u>Lyons</u>, therefore, plaintiffs do not have standing to pursue a claim for declaratory relief, and that portion of their Complaint is deemed stricken.

An appropriate Order accompanies this Memorandum Opinion.

---

[4] The standing requirement "as articulated in <u>Lyons</u> has also been applied in the ADA context."  <u>Douris v. Bucks County Office of the District Attorney</u>, 2004 WL 1529169, at *5 (E.D. Pa. July 6, 2004) (citing cases).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN GONZALEZ, ET AL.             :
                                    :
                    Plaintiffs      :   CIVIL ACTION
                                    :
          vs.                       :
                                    :   NO.  06-CV-5471
COMMONWEALTH OF                     :
PENNSYLVANIA, ET AL.,               :
                                    :
                    Defendants      :

## ORDER

AND NOW, this 6th day of June, 2007, it is hereby ORDERED that:

1.    Defendant Commonwealth of Pennsylvania's Motion to Dismiss (Document No.

7) is DENIED IN PART and GRANTED IN PART.  Plaintiffs' request for declaratory relief in

Count I of their Complaint is deemed stricken;

2.    Plaintiffs' motion to compel (Document No. 24) the production of Rule 26 initial

disclosures is GRANTED.  Defendant Commonwealth is ordered to produce these materials

immediately; and

3.    Defendant Commonwealth's motion for a protective order (Document No. 22) is

DENIED.


                              BY THE COURT:



                              /s/ Thomas M. Golden
                              THOMAS M. GOLDEN, J.